Statement of the Case
PROVO STY, J.
This is the fourth time the controversy between the Houssiere-Latreille Oil Company, hereinafter designated as “the company,” and the Jennings-Heywood Oil Syndicate, hereinafter designated as “the syndicate,” has been before this court in one or other of its phases. In the present proceeding the syndicate applies to this court for a writ of prohibition to prevent the judge of the lower court from entertaining jurisdiction of questions that are claimed to have been already passed upon by this court. For the presentation of the issues the judicial history of the controversy from its inception must be given, though somewhat long.
In April, 1901, Arthur Latreille entered into a contract with S. A. Spencer, purport *350 ing tó grant to the latter, who is the author ■of the relator, the sole and exclusive right ■of taking minerals, and notably petroleum and gas, from a certain 40-acre tract ,of land in the parish of Acadia, and the contract was •duly recorded.
Two years and some months thereafter the relator the syndicate, assignee of Spencer, placed a derrick on the land and began boring a well for petroleum.
The company, claiming to have purchased the land from Arthur Latreille, brought against the relator, the syndicate, a possessory action coupled with an injunction. In its petition it alleged:
“(1) That it bad been in the actual, peaceable, and undisturbed possession of said land, as ■owner, for more than one year, and
“(2) That lately the syndicate had disturbed it, the said company, in the aforesaid possession and enjoyment of said property, by entering upon and interfering with your petitioner’s possession of said tract, by the erection thereon of a derrick, and by pretending to prepare for boring for oil thereon.”
The prayer of the said petition was:
(a) For a writ of injunction “forbidding and restraining any trespassing such as herein-above described upon any part of the above ■described property by defendant” (the syndicate), and for the perpetuation of said injunction; and
(b) For judgment against the syndicate “quieting it [said plaintiff] in its possession •of the aforesaid tract, and especially of that part upon which said derrick has been erected, and restoring to petitioner the possession held by it before said disturbance.”
To the said suit the syndicate, relator here, answered:
(1) By the general denial;
(2) By admitting its possession of the said land, and alleging that the said possession was lawful under the aforesaid oil and mineral lease executed by Latreille to Spencer, respondent’s author;
(3) By alleging that it and its authors had faithfully complied with their obligations under the said lease; but that, if there had been any failure to comply with said obligations, the said failure had been caused by the acts of the lessor, Latreille, and were, besides, excused by the pendency of the Corkran suit (111 La. 563, 35 South. 747), wherein the title of Latreille, lessor, to the leased premises, was called in question; and
(4)By alleging that, promptly after the decisioii of the Corkran suit, it commenced operations on said land for oil and gas, by the erection of a derrick and the placing of machinery'thereon, and by engaging in the boring of a well for that purpose, which operations were stopped by the service of the said writ of injunction.
The prayer of the said answer was:
(a) That “the demands of the plaintiff be rejected and dismissed”; that “the said writ of injunction be dissolved and set aside”; that “your respondent [relator here] be decreed lawfully entitled to the possession of the said land for the purposes stated in the aforesaid contract [oil and mineral lease]”; and
(b) “Assuming the position of plaintiff in reconvention,” for damages against the plaintiff and its surety on the bond for unlawful resort to the writ of injunction.
On May 14, 1904, the district court of the parish of Acadia, having found “the law and the evidence in favor of the defendant and against the plaintiff,” rendered judgment in favor of relator, the syndicate, and against the company, as follows:
(1) Rejecting and disihissing the demands of said plaintiff at its costs, and dissolving and setting aside its writ of injunction;
(2) Dismissing as in case of nonsuit the reconventional demand for damages; and
(3) Decreeing that all costs of the suit should be paid by the plaintiff, the company.
The company appealed suspensively from this judgment. Pending the appeal, it bored a well on the land that proved a gusher, and *352 was taking the oil thus produced when the syndicate, the relator, filed a petition call-. ing the attention of the court to the situation and alleging and praying as follows:
“Petitioner further avers that the said property is being wasted during the pendency of said suit; that the aforesaid defendant herein is taking advantage of the aforesaid process of your honorable court to convert to its own use the oil from the said land and to deprive your petitioner of the same in violation of its rights recognized by the aforesaid judgment of this honorable court; and that the equity powers of this court should be exercised for the purpose of preventing the said failure of justice and preserving the said property during the pendency of the aforesaid suit now on appeal.
“Wherefore petitioner prays your honorable court that in the exercise pf its equity powers it render such orders of court in the aforesaid suit as may be necessary to preserve the said property from waste, and such as may be necessary to prevent the Houssiere-Latreille Oil Company, its assigns, agents, aiders, and abettors aforesaid, from converting the said property to its own use to the injury of your petitioner.”
On this petition the court - ordered an ex officio writ of sequestration to issue, and under this writ the sheriff proceeded to take possession of the oil as it was being produced.
The company moved for a dissolution of the sequestration, on the ground that, the suit having passed - out of the trial court and gone to the appellate court as an effect of the appeal, the trial court was without jurisdiction to make an order in it; also, that the sequestration trenched upon the injunction. The trial court adopted that view, and set aside the sequestration.
The syndicate (relator here) asked for a suspensive appeal from that order, and, same having been refused, applied to this court for a mandamus. The writ was granted, and eventually made absolute, the court holding that after appeal the power still continued to reside in the trial court to take such incidental measures as might be necessary to make effective the eventual judgment in the suit. For report of the case, see 113 La. 572, 37 South. 481. An appeal was then granted in obedience to the mandamus, and it came to this court. 38 South. 458.[1] In addition, to pleading to the jurisdiction of the court, to issue the sequestration, the company, defendant, in the writ, had raised other issues. It had urged that (1) the sequestration had issued improvidently, in that it affected all the oil produced from the land in dispute, although one-eighth of it admittedly belonged to defendant in writ; (2) that the syndicate had no right of property in the oil and no privilege thereon; (3) that the record in the main suit, the possessory action, showed that the syndicate had no right or title in the land in controversy. On the appeal it insisted that this court should pass upon these issues; but, declining to do so, this court confined itself to passing on the question of jurisdiction to issue the writ and remanded the case to be proceeded with- according to law.
Pending all these proceedings, and pending the appeal in the main suit, the company “brought in” other wells on the land, and a second sequestration issued, in every respect similar to the first; and under it the sheriff proceeded to take possession of the oil produced by the additional wells as it was produced.
Also, pending the appeal in the main suit, the syndicate instituted a suit against the Houssiere-Latreille Oil Company, in which, relying upon the same contract it relied on in its defense to the possessory action, and setting forth the pendency of the possessory action, and complaining of the same acts of the company on which the sequestration was based, it prayed as follows:
That an injunction issue prohibiting the company “from carrying on any operations whatsoever for the purpose of boring and constructing wells by means of which to extract oil from said land, and that after hearing said injunction be maintained and perpetuated until the final determination of the aforesaid appeal in the aforesaid cause (possessory action), and until it shall be finally determined who is entitled to the possession and ownership of the rights *354 herein claimed by petitioner under the aforesaid oil and mineral lease.
“Petitioner further prays that there be judgment in its favor and against the said defendants, recognizing and enforcing the rights claimed by your petitioner as such by virtue of the aforesaid oil and mineral lease, and especially that your petitioner be decreed, by virtue of said contract and its compliance with the terms and conditions thereto, to be vested with the sole and exclusive right of mining and operating for oil and gas on the said land, and of laying pipe lines, and of building tanks, stations, and structures thereon to take care of the said products.
“And petitioner further prays that the said defendants be perpetually enjoined and prohibited from doing any of the acts herein complained of, and from in any manner molesting, impeding, or interfering with your petitioner in the free and untrammeled exercise of the rights conferred by the aforesaid oil and mineral lease, as herein claimed.”
On the 4th of January, 1905, this court handed down the following judgment in the main suit (38 South. 932, 115 La. 107) or possessory action:
“The law and the evidence being in favor of defendants and against plaintiffs, it is ordered, adjudged, and decreed that plaintiffs’ action be dismissed, and their injunction dissolved, at their costs in both courts.
“It is further ordered that the reconventional demand for damages be, and the same is, hereby dismissed as in case of nonsuit, fully reserving the rights of said defendants to sue and recover said'damages, if any, in another suit.”
A rehearing was granted, and on the 22d of June, 1905, the above judgment was reinstated and made the final judgment of the court. 38 South. 935, 115 La. 197.
Nothing further had been done in the matter of the sequestration after it had been remanded to the lower court for trial according to law, and nothing had been done in the matter of the main suit after the decree of this court had become final and been recorded in the lower court, when, on July 3, 1905, 11 days after the judgment had become final, the company filed in the lower court an ex parte motion praying that the ex officio sequestration first issued as aforesaid be dissolved and set aside, and that the oil held by the sheriff thereunder be turned over to it, on the grounds:
“(1) That said sequestration was prayed for, and was issued only to have effect during the pendency of the suit of the Houssiere-Latreille Oil Company v. Jennings-Heywood Oil Syndicate, No. 1,881 of the docket of this honorable court, a possessory action; the object of said writ being that the oil sequestered thereunder should be held to respond to whatever judgment of court might be rendered in said cause and affecting same; but that said suit has been finally decided, without any judgment having been rendered therein affecting said oil, hence the said sequestration has become functus officio.
“(2) That said sequestration be dissolved for-the further reason that the Jennings-Heywood-Oil Syndicate has become plaintiff in a petitory action against this defendant, and has recognized in said petitory action your mover’s possession of the property and oil in controversy, and that the sequestration, being merely incidental to the possessory action, now final, without results so far as the oil is concerned, should be dissolved.”
On this motion, after regular trial, the court rendered judgment dissolving and setting aside the sequestration, condemning the-syndicate (relator here) to pay the costs of the sequestration and of the motion to. dissolve. From that judgment the relator obtained and perfected a suspensive appeal to this court, which appeal is now pending im this court. The bond for the appeal is im the sum of $30,000.
On August 4, 1905, the company filed a similar motion to dissolve the ex officio sequestration secondly issued as aforesaid. To-that motion the syndicate (relator here> pleaded to the jurisdiction of the court om grounds that will be presently stated.
The court overruled the exception. The relator excepted to the ruling, and applied to-this court for writs of certiorari, mandamus,, and prohibition. The trial judge was ordered to show cause, and he has done so, and.' that constitutes one of the matters before* the court in the present proceeding.
The relator’s complaint in that regard is stated in its petition, as follows:
“Your relator avers that by the judgment aforesaid in the possessory action it was determined and adjudged by the district court and by the Supreme Court as follows:
“(1) That the said Houssiere-Latreille Oil Company was not in possession and was not en *356 titled to the possession of the land affected by the aforesaid oil and mineral lease in favor of Spencer, relator’s author.
“(2) That the possessory action of the said I-Ioussiere-Latreille Oil Company be dismissed.
“(3) That the injunction obtained by said Houssiere-Latz'eille Oil Company to prevent your relator from entering upon the said land and prosecuting its mining operations thereon be dissolved. .
“(4) That the contract under which your relator held possession of the land in controversy, and under which the said mining operations were carried on, was not invalid, and that relator was entitled to possession thereunder.
“(5) That the said I-Ioussiere-Latreille Oil •Company shall pay all the costs of the said possessory action, both in the district and in the ‘Supreme Court.
“Your relator avers that, although the said judgments are in its favor and are its property, it has not as yet taken any steps to secure the •execution thereof, except that promptly after ■the finality of said judgment it resumed the mining operations which had been arrested by the •said injunction; that, as hereinbefore alleged, although the 'parties to the said possessory action allowed the said incidental sequestration ■proceedings to remain dormant during the pen-dency of the appeal, and although your relator, to whom said judgment belongs, bias taken no action looking to its execution, Hon. Philip S. Tugh, judge of the lower court, has since the 'finality of the said judgment taken illegal and •unwarranted action with reference to the said •sequestration, and in so doing has exceeded his judicial powers and usurped the jurisdiction of this honorable court.
“That the said acts of usurpation consist of the following:
“(1) On July 3, 1908, 11 days after the finality of this court’s judgment on the appeal in said possessory action, the said Houssiere-Lat•reille Oil Company filed in the lower court an ex parte'motion praying the sequestration, first issued ex officio as aforesaid, be dissolved and set aside, and that the oil held by the sheriff thereunder be turned over to said Houssiere-Xjatreille Oil Company on the ground:
“(a) That the said sequestration was issued only to have effect during the pendency of the aforesaid possessory action; and
“(b) That the object of the said writ was that the oil sequestered thereunder should be held to respond to whatever judgment of court might be rendered in said cause affecting the same, but that the said suit has been finally decided without any judgment having been rendered therein affecting said oil, and said sequestration, being ■merely incidental to the possessory action, then final, has become functus officio.
“That your relator was not named as a party to said motion, nor served with process in connection therewith, and that on July 24, 1905, the said judge pronounced judgment on said ex parte motion:
“(a) Dissolving and setting aside the said writ of sequestration;
“(b) Condemning your relators to pay all the costs of said sequestration; and
“(c) Condemning your relator to pay all the costs of said motion to dissolve.
“That after this order had been made, your relator moved for a suspensive and devolutive appeal thei'efz'om to this honorable court, whereupon his honor, the presiding judge, ascertained from the sheriff the amount of the charges accruing under the aforesaid contract with the Texas Company, and upon the assumption that such charges were costs which, in connection with the ordinary costs of said sequestration and of said motion to dissolve, should be considered in fixing the amount of the appeal bond to be furnished by your relator, he would not allow the said appeal except upon the execution of a bond for $30,000; this being the sum chai'geable under the aforesaid contract against the oil thus ordered released.
“That from the said judgment relator nevertheless perfected the said appeal, and lodged the transcript thereof in this honoi'able court, as will appear by reference to the record, No. 15,818 of the files of this court, entitled ‘Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Company.’
“That on August 4, 1905, more than 40 days after the finality of the aforesaid judgment on appeal on said possessoi-y action, the said I-Ioussiere-Latreille Oil Company filed in the lower court another ex parte motion praying that, on the same grounds and for the same reasons, the sequestration secondly issued ex officio as aforesaid he dissolved and set aside, and that the oil thereunder held by the shei'iff be turned over to the said Houssiez'e-Latreille Oil Company.
“That the said motion was filed during the vacation of the court. That your relator was not named as a party thereto, nor sei-ved with process in connection therewith, or othei'wise given notice of the pendency of said motion. That, upon learning that the said motion had been filed, your relator pleaded to the jurisdiction of the court as follows:
“(1) Exceptor has not been cited to answer said motion, and has not been served with a copy thereof, in the alternative.
“(2) Because said sequestration was ancillary and incidental to the aforesaid possessory action ; that it was issued after the said appeal had been perfected; that it was issued ex officio, pending said appeal, for the purpose of conserving the oil during the pendency of said cause; that the said appeal had been finally decided; that all the issues therein were determined by the Supreme Court; and that no additional decree could be rendered therein by the trial court.
“(3) Because, by reason of the judgment of the Supreme Court being final, the trial court cannot add to, amend, or otherwise change the said judgment, or grant any order or decree with reference thereto which would authorize or make an appeal necessary.
“(4) Because any order that may be made *358 on said motion will be with reference to a case finally and definitely settled and determined by the Supreme Court, and which is conclusively adjudged.
“(5) That the execution of the said judgment is a purely ministerial act, which under the law is to be performed by the clerk $nd the sheriff, and not by the trial judge.
“(6) That the granting of the said motion, or any portion thereof, will involve an order or decree contravening the judgment of the Supreme Court in the following particulars:
“(a) It is determined in the decree of the Supreme Court that said Houssiere-Latreille Oil Company is not entitled to the oil referred to in said motion;
“ (b) It is determined in said decree that your relator is the owner of said oil and entitled to the possession thereof; and
“(c) It is adjudged in said decree that your relator recover, and that said Houssiere-Latreille Oil Company pay, all the costs of said suit in both courts.
“(7) That on July 3, 1905, a similar motion was filed with reference to the oil sequestered under the first writ (as hereinbefore recited); that the court, in ruling upon said motion and dissolving said sequestration, held that in passing upon said motion it was necessary to adjudge the costs thex-eof against your relator, and any ruling on behalf of the movers herein will, upon the views expressed by the court, involve a judgment for costs against your relator in conflict with the aforesaid decree of the Supreme Court.
“(8) That it has already been determined by the district and Supreme Courts that the said writ of sequestration properly issued; that said decree has not been appealed from, nor set aside; that the said sequestration was properly issued and maintained; that all the issues in the cause have been finally detex-mined, and the court cannot now dissolve said sequestration, or take any action in reference thereto which would change the legal status fixed by the determination of the litigation and the aforesaid judgment of the Supreme Court; that no action with reference to said sequestration can legally be taken, except the execution of said judgment thi’ough the proper officers of the court by turning over to relator the oil seized under the said writs of sequestration; that the judge of the trial court overruled the •said exception, and your relator excepted to said ruling.”
The foregoing constitutes one of the grounds upon which the writs in question are prayed for against the trial judge. Another ground is set forth in the petition as follows:
“That while by said wx'its the said sheriff was ordered to sell the oil to be seized, only a small portion of the said oil was sold; the balance being held by him and stored under ■a so-called contract between the said sheriff and ‘the Texas Company,’ a foreign corporation.
“That the said so-called contract contained the following provisions:
“ ‘(1) The Texas Company agreed to store the sequestex-ed oil in its earthern tanks and pipe lines, subject to pipage and storage obligations already in force and subject to its ability to fulfill and discharge same with its present facilities and such others as it may see fit to install.
“ ‘(2) The Texas Company shall deduct 5 per cent, from the oil upon its receipt, becoming responsible for 95 per cent, -of the said oil only ; and each month thereafter the Texas Company shall deduct an additional 1 per cent, from said oil.
“ ‘(3) The said sheriff shall pay a storage charge of one cent per barrel per month.
“ ‘(4) For each barrel delivered, the Texas Company shall be entitled to collect the additional sum of 10 cents per barrel for pipage.
“ ‘(5) The Texas Company shall have the right to substitute other oil for that delivered to it.
“ ‘(6) The Texas Company shall not in any event be liable for loss resulting from lightning, fire, storms, or other unavoidable causes, and such loss shall be deducted pro rata from all oil in the pipe lines and storage tanks of the said Texas Company at the time of such loss, and all accrued storage and pipage charges shall be paid upon the amounts so deducted; and
“ ‘(7) Payments for pipage and storage charges shall be made at Beaumont, Tex.’
“That under this unconscionable agreement chax-ges have accrued with reference to said oil in a sum claimed to- exceed $200,000, and that the same are continually being added to; that it is, besides, insisted by said Texas Company that, under the sixth provision of its so-called contract as above set forth, whoever is responsible for the charges under said contract is also responsible for the loss by fire by said Texas Company of about 2,500,000 barrels of oil at Humble and Sour Lake, Tex., in the proportion that the oil stored by the sheriff bears to the entire amount of oil stored by the Texas Company in Texas and Louisiana.”
“That on October 10, 1905, the sheriff of the parish of Acadia filed in the lower court a rule in which he represented that under the aforesaid writs of sequestration he had seized, and still continued to seize as it was produced, a large qxxantity of oil; that the keepers’ fees and other court costs to him, the said sheriff, amounted to $12,912.77 on October 1, 1905; that the future costs of maintaining said sequestration will amount to at least $222.50 per month, which sum your relator should advance to him each month, in addition to the furnishing of a bond sufficient to protect him, the said sheriff, from all costs; that he had been compelled to contract witli certain companies and individuals (including the aforesaid Texas Company) for the storage of the sequestered oil; and that the charges for said storage had then x-eached a sum exceeding $85,000.
*360 “That upon the said allegations the sheriff prayed that his said bill of costs be approved, allowed, and ordered paid; that the keepers’ fees be taxed, and your relator be ordered to pay such as have already accrued; that relator be required to furnish bond for costs to cover all further costs and to advance $222.50 monthly, as the estimated cost of keepers’ fees, etc.; that the aforesaid storage contracts be ratified and decreed as charged for the preservation of the sequestered oil and following it; and, in the alternative that the same should not be decreed, but that the same should be decreed to be court costs, following the suit, that your relator be required to furnish bond to secure said storage charges, and that upon the failure of your relator to comply with the judgment of court rendered in said rule he, said sheriff, be relieved from any further responsibililv under the said writs.
“Relator further avers that Hon. Philip S. Pugh, judge of said court, has issued an order ruling all the parties to said proceedings to show cause on November 6, 1905, why the prayer of the aforesaid motion should not be granted and the said rule to be absolute.
“Relator further avers that on October 16, 1905, the said sheriff presented another motion to the said judge, in which he prayed that your relator be ordered instanter to furnish him a provisional bond for costs in the sum of $96,-997.77, and that, without any notice to your relator and without any hearing whatsoever, the said judge entered an ex parte order upon the said motion requiring your relator to furnish to said sheriff, within five days, a provisional bond for costs in the sum 'of $10,000 to secure him in all costs already accrued, and in those which may accrue pending the trial of the said rule to tax costs.”
The petition of the relator proceeds as follows :
“Now your relator avers that among the reasons why the said judge was incompetent to take the aforesaid action, and render the aforesaid orders in the said cause are the following:
“(1) That the judgment rendered in the said possessory action by your honorable court was final and definitive, terminating and putting at rest all questions involved in the aforesaid sequestrations issued ex officio to' conserve the property pending the said possessory action; that the sequestrations having issued pending said suit, and being based upon the exercise of the judge of the judicial discretion vested in him and predicated upon his own knowledge of the pleadings and facts in the said possessory action, are vindicated by the final decisions of the said action in favor of your relator, without there being a necessity for any further trial of the same; that a trial of the same would simply involve an inquiry into facts of which the court necessarily adjudged the existence as a condition precedent to the exercise of his discretion at the time he ordered the said sequestrations ex officio; and that by a trial the judge would simply adjudge for himself a fact which has already been determined—that is, that the court had properly exercised discretion in the matter;
“(2) That, the Supreme Court having decided in the said possessory action that tile-said Houssiere-Latreille Oil Company was not in possession of the said land and that your relator’s mineral lease under which it justified its possession of the said land was valid upon its face, said contract produces its effects until set aside by a judgment of court, and as a consequence thereof that the said sequestered oil should not be released to said Houssiere-Latreille Oil Company, but to your relator as lessee of the said premises for the production of oil under the said contract;
“(3) That, the judgment in the possessory action having condemned said Houssiere-Latreille Oil Company to pay all the costs of the said suit, the costs of the said sequestration proceedings, which were provoked by the unlawful and unwarranted acts of said Houssiere-Latreille Oil Company and which are purely incidental to the said main action, should be paid by the party cast in said suit, and not by your relator, who was the innocent party, and who was victorious in said suit;
“(4) That the rule taken by the sheriff as aforesaid, involves likewise the liability of the parties to said litigation for costs, which question has already been finally determined by this honorable court, and that in view of the previous action of the said judge in condemning your relator as prayed for by the said sheriff;
“(5) That for the same reason it was incompetent for the said judge to order, ex parte or otherwise, the furnishing of a provisional bond of $10,000 to the sheriff for his costs;
“(6) That the action of the said judge involves the execution of a judgment rendered by your honorable court, and that the said judge has proceeded to said execution, not only without jurisdiction in him vested by law, but without any request thereto on the part of your relator, whose property the said judgment is;
“(7) That the said action of the judge also-involves an interpretation of the said judgment, and that he has erroneously interpreted the same to the great injury and damage of your relator;
“(8) That the said judge erred in entertaining proceedings in said cause, and rendering any order or decree therein, which would authorize or render an appeal necessary;
“(9) That he has erred in determining without any trial on the merits (if such was necessary), and without determining to whom the sequestered oil belonged, who was entitled to the possession of the same (if also necessary) , that the writ of sequestration should be dissolved (not merely that the seizure should be released) and that your relator should be cast for costs of said sequestrations;
“(10) That he has erred in entertaining *362 jurisdiction of said motions and rule in a cause terminated by final judgment, without citation or other process to your relator; and
“(11) That he has erred in adjudging that where sequestration issued ex officio in a cause pending before the Supreme Court, to conserve the property in dispute pending a final disposition of said cause, and in which neither party invoked the revisory power of the Supreme Court in questioning the propriety of said incidental proceedings, the lower court could, upon motion and without process after the final determination of. said cause, dissolve the said sequestrations (not merely order the release of the oil) and order that the costs of said sequestrations be paid by your relator, for whose protection the same were issued and in whose behalf every issue in said possessory action was determined.
“Relator avers that the said unwarranted acts and usurpations of jurisdiction on the part of the trial judge amount to a denial of justice; that in rendering the orders and entertaining the proceedings above referred to he has acted not only without the bonds of his jurisdiction, but in conflict with the judgment of this court in the possessory action; that in rendering said orders and entertaining said motions he has misinterpreted said judgment and evinced a disposition to further misinterpret the same; that having already misinterpreted the said judgment with reference to the sequestration first issued, and making another appeal necessary, ho will, when the motion to dissolve the second sequestrian is tried, render a similar judgment or order therein; and that he will, as in the first case, take into consideration, in fixing the amount of the appeal bond, the charges for the storage of the said oil, and make it practically impossible for your relator to appeal from the said order because of the excessiveness of said bond, which will be fixed at, say $100,000.
“That in order to put a stop to the said usurpatory acts on the part of the trial judge, and to obviate a flagrant denial of justice, your relator is entitled to the supervisory process of this honorable court, and that it has given due notice to the said judge, the said Houssiere-Latreille Oil Company, and Joseph L. Murrel, sheriff of Acadia parish, of its intention to apply to this court for the relief herein invoked.”
In response to the order to show cause why the orders of mandamus and prohibition thus prayed for should not be made peremptory, the judge of the lower court has made the following return:
“Now into court in proper person comes Philip S. Pugh, judge of the Eighteenth judicial district, who in answer to the rule to show cause and to the order to produce certified copies of all proceedings had, hereby annexes the following documents:
“(1) All the proceedings had in the dissolution of the sequestration first issued and to be found in the transcript filed in the_ Supreme Court by the syndicate, being No. 15,818, and entitled ‘Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Company.’
“(2) Rule on sheriff and order of court thereon, marked ‘B.’
“(3) Motion to dissolve second sequestration, plea to the jurisdiction, and reasons of court for overruling same, marked ‘C.’
“(4) Copies of petition and supplemental petition and answer and supplemental answer in suit No. 2,120 on the docket of the district court, and referred to in the motion to dissolve, marked ‘D.’
“(5) Rule of the sheriff to show cause, together with annexed documents and bills, including statement obtained from sheriff showing oil on hand, contracts, etc., marked ‘E.’
“(0) Motion of sheriff to compel plaintiff in sequestration, relators here, to furnish bond provisionally and order thereon, marked ‘E.’ “(7) Minutes of court showing fixing of motion to dissolve, etc., marked ‘G.’
“And, answering further, your respondent denies that he has transcended his jurisdiction or has usurped his authority not vested in him by law.
“And in answering further he avers that in so far as the first ruling is concerned this is a matter now before the Supreme Court on suspensive appeal, and that this court can take no action thereon herein.
“That the first motion was regularly filed, taken up, tried, argued, and submitted by counsel of both sides; that no plea to the jurisdiction was filed by relators and no question raised of that kind in the lower court; that the motion to dissolve was filed in open court, taken up regularly, evidence adduced, argument heard, and judgment regularly rendered.
“That under the rules and practice of this court, all exceptions, motions, etc., are filed; that no notice is given opposite parties, and that they stand fixed for trial for the next day if no evidence is required, and if evidence is required they are regularly fixed; that all of this was done, and that relators have no right to any writ in so far as this motion is concerned.
“And, answering further, your respondent avers that an immense quantity of oil had been seized under the writ of sequestration provoked by the syndicate on August 5, 1904, and on December 22, 1904; that it required several keepers to watch and care for same and to keep the account thereof and receive it as it was produced daily; that the said oil was stored and that the storage charged each month aggregated a large sum; that the sheriff had been ordered by this court not to sell or dispose of said oil, on account of the low prices prevailing for oil at the time of the order; that in dissolving the sequestration at the costs of the syndicate it followed necesarily that it was bound for the storage charges, keepers’ fees, and other expen *364 ses incurred therein; that in fixing the bond for suspensive and devolutive appeal your respondent inquired of the clerk and sheriff the approximate amount of their costs, including storage charges and keepers’ fees, and fixed the amount of the bond to cover same; that no motion was filed by the syndicate to reduce the amount of the bond, but same was duly furnished ; that your respondent has never passed upon the question of the contracts entered into by the sheriff and has never ratified same in any way, nor has he passed or attempted to pass upon the correctness of the bills of said sheriff; that he only assumed the correctness of said bills in so far as the fixing of the suspensive and devolutive appeal bond was concerned, and same was done for the protection of the officers; that no harm was done, as the syndicate by giving said bond would not be responsible for more costs than were found to be due after hearing all parties. „
“You» respondent again denies that any advantage of the syndicate was taken by him; that it was duly heard in its own behalf; and that your respondent, on his own motion, heard argument of its counsel, after the motion to dissolve had been submitted and the matter closed.
“Your respondent further alleges that when the second motion to dissolve was filed, during vacation, counsel for the Houssiere-Latreille Oil Company and your respondent notified counsel for the syndicate that the motion would be heard on the first day that court opened; that on the 2d day of October, 1905, the day the district court opened, when the second motion to dissolve was called up, counsel for syndicate insisted that the motion could not be heard, same not having been fixed regularly under the rules of court, which objection was sustained by your respondent, and the motion was then regularly fixed for the following day, October 3, 1905; that on said day counsel for syndicate then filed a plea to the jurisdiction, which was overruled by your respondent for the reasons assigned, and that nothing more was done in the motion to dissolve, counsel for _ the syndicate having notified the court of their intention to apply for writs of certiorari, etc.; that your respondent was not prohibited by said notice from action on the motion to dissolve, and could have legally done so, a considerable time intervening between the time the notice was given and the serving of the rule to show cause on your respondent, but, having been notified, he as a matter of courtesy to the attorneys and a desire not to be arbitrary in the matter took no further action therein.
“And, further answering, your respondent avers that he had full jurisdiction to pass upon the matters connected with the sequestration, for the reason that both were issued long after a suspensive appeal had been taken by the Houssiere-Latreille Oil Company from the judgment dismissing their possessory action; that they were not taken before the Supreme Court in said appeal, and therefore necessarily could not be passed upon by that court, not being before it; that when the syndicate mandamused Judge De Baillon to compel him to grant it a suspensive appeal from his judgment setting aside said sequestrations, it held that the district court had jurisdiction to issue the writ (see State ex rel Jennings-Heywood Oil Syndicate v. Judge [No. 13,370] 113 La. 572, 37 South. 481); and again, on the appeal by the syndicate from the dissolving order, the same was set aside, the sequestration practically reinstated, and the court, Justice Monroe being the organ, doubted its power to decide upon the merits a case upon which the trial judge had declined to' entertain jurisdiction, and finally remanded the case to the lower court to be proceeded with according to law (see Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co. [No. 15,477] 38 South. 458.)[2] Again in Clement v. Breaux, 38 South. 900,[3] the court specifically holds that the appellate court cannot pass upon issues neither decided nor passed upon by the lower court. These matters, then, having been specifically remanded to the district court for action, and never having been presented to the Supreme Court nor passed upon by it, it follows that the district court had jurisdiction to act thereon.
“After the final decision of this matter by the Supreme Court, the Houssiere-Latreille Oil Company filed its motion to dissolve the sequestration which had been taken out by the syndicate after the suspensive appeal from the main judgment; and the matter was regularly tried before your respondent, evidence submitted, argument heard, and judgment rendered by him setting aside the sequestration on the ground that, the main suit having been decided, the sequestration was a nullity, and on the further ground that, the suit having finally terminated without any adjudication as to the right of defendants to possession, the writ of sequestration was, like Mahomet’s coffin, suspended in midair without being connected in any manner with any suit, and that necessarily, under the same rule as established by Judge Provosty in suit No. 15,721 (39 South. 441, 115 La. 451) the writ died; both parties in their arguments admitting that the writ was functus officio.
“Whether the ruling of your respondent was right or wrong on the motion to dissolve will come up in the proper manner and at the proper time, but the question of jurisdiction is entirely distinct from the decision of the case on its merits.
“Your respondent further alleges that the first sequestration was docketed and filed under a different title and number from the possessory action, and the second sequestration was likewise given a different title and number from the possessory action and the first sequestration, though by order of the district court the three were ordered consolidated; the numbers being, respectively, 1,881, 2,065 and 2,238 on the docket of said court.
“And. answering further, your respondent denies that in his judgment of dissolution he recognized any one as the owner of the oil sequestered under the writ, but avers, on the con *366 trary, that this was purposely left open, so that the parties could assert whatever other rights they had.
“Your respondent now avers his intention to render, on the second motion filed to dissolve the sequestration, the same character of judgment as he rendered on the motion filed to dissolve the first sequestration.
“Your respondent admits that he signed the said orders presented by the sheriff as alleged.
“That the rule to tax costs was legitimate and proper. That the syndicate first complains that your respondent accepted the estimated costs of the sheriff in fixing the amount of the suspensive and devolutive bond, and now complains that the court should not fix the said costs and tax same. A glance at the annexed bills is sufficient to show that the sheriff is vitally interested therein, and, on the other hand, an opportunity is afforded the syndicate of attacking the contracts of the sheriff about which it inveighs so bitterly (see section 1 of Act No. 203 of 1898, p. 485).
“That the second order is practically a part of the first, and was rendered, not for the purpose of annoying the syndicate, but for the protection of an officer in the discharge of a ministerial duty which under the law he was compelled to perform.
“That the sheriff, acting under the order of court, sequestered, and still continues to sequester large quantities of oil daily. That upon the dissolution of the writ by your respondent the syndicate, acting within their rights suspensively appealed, and the sheriff still continues to sequester. That 'the said sheriff has never been notified by the lower court that the writs have expired, and that they are functus ex officio, nor has he received any such notice from the syndicate.
“Whether the suit be ended or not, the sheriff is entitled to tax costs, and is entitled to cali upon the plaintiff in sequestration therefor; it being primarily hound, in any event. He can, upon this bill being approved by the judge, issue execution against the plaintiff. If this can be done, and of this there can be no question, it follows that if the judge can, by mere approval of a bill ex parte, cause execution to issue, he can also order plaintiff to furnish provisional bond. The greater necessarily includes the less. The bond called for is small in amount compared to the bills presented..
“Wherefore he prays that he be hence dismissed with costs, and that the writs prayed for be denied.
“Respectfully submitted.
“Philip S. Pugh,
“Judge 18th Jud. Dist. of La.”
The return of the sheriff is as follows:
“Now into this honorable court comes Joseph L. Murrel, sheriff, through his undersigned counsel, and for answer denies that the district judge has in any manner usurped his authority, and particularly has he not done so in the matters af the rule on behalf of respondent and against relators to tax costs, compel the furnishing of bond for sheriffs’ costs, and the order calling upon the relators within five days to furnish provisional bond for costs, for the following reasons, to wit:
“That on August 5, 1904, the defendants in No. 15,304 on the docket of this honorable court, entitled ‘Houssiere-Latreille Oil Company v. Jennings-Heywood Oil Syndicate,’ relators herein, caused the issuance of a judicial sequestration and the seizure of all the oil produced and' then being taken from the land in controversy t that under the said writ respondent seized and took into his possession large quantities of oil, which he had been keeping ever since under great expense for storage, keepers’ fees, and other charges for preservation; that again on December 31, 1904, additional wells having been bored by the Houssiere-Latreille Oil Company, the defendants (relators herein) caused another judicial sequestration to issue, whereupon respondent was compelled to seize additional oil, store and retain keepers over it, entailing upon him charges for storage, keepers’ fees, and other costs for preservation of the oil; that oil seized under both sequestrations still remains under respondent’s charge pending the termination of the litigation between the parties, with which the respondent is not concerned, except to the extent of his costs, storage, keepers’ fees, and other charges resulting from the carrying out of the mandates of the court, and to protect him in which he is now seeking the aid of the court in forcing the party primarily responsible to not only furnish bond as security for costs, but to advance from month to month the money necessary to meet the expenses incurred.
“Respondent further avers that, as will be seen by reference to the annexed detailed and itemized bills of costs, storage charges, and keepers’ fees, a great outlay of funds has been required of him and a great responsibility imposed-upon him by virtue of the litigation between the parties; that there is absolutely no justice in requiring him to incur all the said financial outlay and responsibility; that under the ruling in the case in 113 La. 574, 37 South. 481, State ex rel. Jennings-Heywood Oil Syndicate v. De Baillon, Judge, the district court has jurisdiction at any period of the cause, whether on appeal or otherwise, to make orders clearly necessary to afford a remedy when otherwise there would be none.
“That sections 1 and 5 of Act No.. 203 of 1898, p. 485, 490, respectively, upheld in 10!> La. 210, 33 South. 199, State ex rel. Boone v. Edwards, give respondent the right to force security for costs, and the repeated jurisprudence of the state requires plaintiffs in matters of sequestrations and attachments to advance costs-to the sheriff for the preservation and keeping, of the property seized; that respondent is not compelled to invoke his rights in matters of requiring security for costs in advance, but can-do so at any period of the litigation, and especially so when he discovers that the same is burdensome and wholly beyond his financial' ability to provide for, as in the case now complained of.
*368 “Referring to the contract with the Texas Company for the storage of oil, respondent says: That this contract is now before the district court, under the rule to tax costs and furnish security for costs, for approval; that the district court has never passed upon the said contract; that the relators are thereby given every opportunity to contest its validity, and the matter cannot be passed upon by this honorable court until it has been passed upon by the lower court; that in defense of his actions therein he says that he was virtually forced to the said contract by reason of all other facilities of storage previously engaged being exhausted, and, not being able to secure storage facilities elsewhere, some provision had to be made to prevent the oil, Which was being produced, from going to waste.
“Respondent finally avers that he is not concerned with the issue between the litigants; that it is admitted by the relator’s own petition herein that large charges for costs, storage, and keepers’ fees in preservation of the oil are daily accruing; that the said costs are the result of the relator’s acts in causing the sequestration and seizure of the oil; that the said relator by appeal and other remedies and processes •causes the oil to remain in respondent’s possession to continue which charges afcvresaid are 'incurred and considerable outlay of funds imposed upon respondent;, that relator, while admitting in its petition herein that it is owner of the judgment in suit No. 15,304 and controls its execution, has never taken out any proceedings nor made any' move to relieve the sheriff of liis possession of the oil sequestered and the responsibility thereunder imposed upon him, but to the contrary is contesting before the lower •court the dissolution of the sequestration and is thereby maintaining the oil in respondent’s possession under heavy charges and expenses; that respondent is entitled to protection against the possible eventual loss of these outlays, and the only relief open to him is to compel relator to furnish security for costs, as well as to advance funds from time to time to pay the costs, etc., Incurred for the preservation of the oil sequestered.
“Wherefore, respondent prays that relator’s application be dismissed, with costs.”
Opinion.
There need little be added to the very •clear and convincing return of the very able district judge, which carries intrinsic •evidence of the matter having had the caretfullest consideration. So far as the sheriff’s rule is concerned, this court had occasion recently. in the matter of J. Sully Martel v. Jennings-Heywood Oil Co. Syndicate (No. 15,844) 39 South. 705,[4] to consider the same question practically, and what was there said is equally applicable here, to wit:
Syllabus:
“(1) The law contemplates that the sheriff may require security for his costs, and may recover the same, from the plaintiff, and his right to do so is not affected by the fact that, as between the plaintiff and defendant, the latter may be condemned; hence, notwithstanding that, by judgment of this court, a defendant is condemned (in favor of the plaintiff) to pay costs, the judge of the district court has jurisdiction as between the plaintiff and the sheriff to require the former to pay them, or to give bond.
“(2) Where the judge of the district court is vested with jurisdiction to render a judgment, from which an appeal lies, a writ of prohibition to restrain the execution of said judgment will not, ordinarily, issue from this court.”
So far as the setting aside of the sequestration first issued is concerned, a ■ double answer suggests itself: First, the jurisdiction of the court was not excepted to (State ex rel. Romero v. Judge, 47 La. Ann. 1600, 18 South. 634); and, secondly, the matter is now on appeal in this court and has passed out of the lower court.
So far as the setting aside of the sequestration secondly issued is concerned, the trial judge ex necessitate had jurisdiction to pass on the matter, as it had never been passed on, and no other court could possibly pass on it. It is not true that this court has passed on it, either in the main or possessory suit, or in the proceedings to compel the lower court to grant an appeal from the dissolving order, or on the appeal from the dissolving order. The sole question before the court in the last-named case was as to the jurisdiction of the lower court to order an ex officio sequestration in a case after an appeal had been perfected and the case as a consequence had passed to the appellate court. The sequestration on its merits was not before this court. The sole question before this court in the possessory action was as to the right of possession. The sequestration, which had been issued and levied after the appeal in the case had been perfected, *370 was not before the court. It may well be that the findings of this court in these several cases are determinative of the issues involved in the sequestration; but those issu'es, nevertheless, have in point of fact never as yet been determined by any court, except in so far as the lower court has thus far passed upon them. The anomalous situation of the ancillary proceeding continuing to be still undecided after the main ease had been decided has been brought about by the peculiar circumstances of the case. Whatever may be said of it, it could not justify the conclusion that this sequestration has been passed on on its merits when as a matter of fact it has not been passed on on its merits.
Nor is it true that in the possessory suit this court condemned the Houssiere-Latreille Oil Company to pay the costs of this sequestration. The only costs as to which this court could make a decree in that case were the costs of the ease in so far as the case was before the court. If the case presented other phases which were not before the court, the ■costs involved in such other phases were not embraced in the decree of the court. From the findings of the court the same result may in the end be arrived at, but it has not as yet been reached.
It is therefore ordered, adjudged, and decreed that the restraining order herein be rescinded, and that this proceeding be dismissed at the cost of the relator.

 114 La. 573.

 114 La. 573.

 115 La. 77.

 115 La. 615.